UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KEVIN SIERRA-LOPEZ,

      Plaintiff,

v.               Case No. 17-cv-1222-pp

OFFICER KOZAK, CORPORAL DEQUAINE,
LT RHODE, NURSE PAGELS,
BROWN COUNTY JAIL, JOHN GOSSAGE,
PHIL STEFFEN, CAPTAIN MALCOLMSON,
and CO HIGGINS,

      Defendants.

---

**ORDER SCREENING PLAINTIFF'S AMENDED COMPLAINT (DKT. NO. 13)**

---

  Plaintiff Kevin Sierra-Lopez, who is representing himself, is an inmate incarcerated at the Wisconsin Secure Program Facility. He filed a complaint alleging that while he was a state prisoner housed at the Brown County Jail, his constitutional rights were violated. Dkt. No. 1. This case is assigned to Magistrate Judge William Duffin. On February 28, 2018, Judge Duffin screened the plaintiff's complaint and found that he had stated an Eighth Amendment claim of deliberate indifference to his serious medical needs against defendants Officer Kozak, Corporal Dequaine and Lieutenant Rhodes; Judge Duffin concluded, however, that the plaintiff had not stated claims against the other named defendants, Dkt. No. 12 at 10. Judge Duffin noted that the plaintiff had made several claims against the Brown County Jail, but pointed out that the jail was not a legal entity that could be sued under §1983.

Id. at 11. He suggested that because the jail was an arm of Brown County, Brown County might be the more appropriate party. Id. at 12. Judge Duffin gave the plaintiff an opportunity to amend his complaint to address the issues Judge Duffin had raised in his order, id., and the court received the plaintiff's amended complaint on March 13, 2018, dkt. no. 13.

Although the plaintiff consented to Judge Duffin hearing and deciding the case, the defendants have not yet had the opportunity to decide whether to consent because, until now, the court has not screened the amended complaint, and has not ordered any complaint to be served on the defendants. Because *both* parties have not yet consented to the magistrate judge hearing the case, the clerk's office has referred it to this court to screen the amended complaint and decide whether it should be served on any of the defendants.

**I. Screening of the Complaint**

   A. Federal Screening Standard

The Court is required to screen complaints, including amended complaints, brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by the defendant acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give a plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.  Plaintiff's Allegations

In the amended complaint, the plaintiff has named the following defendants: "Sheriff John R. Gossage (Brown County Jail (BCJ))," Phil Steffen ("Head Lieutenant at BCJ"), Malcolmson ("Capt. at BCJ"), Officer Kozak, Corporal Dequaine, Lieutenant Rhode, Nurse Pagels, Officer Higgins, and—despite Judge Duffin's instruction—the Brown County Jail. Dkt. No. 13 at 1.

The plaintiff alleges that while he was being housed at Brown County Jail (Jail) he was kept in "Fox Pod segregation, Day Room FI1 in cell #103 F." Id. at ¶16. He asserts that prior to his incarceration at the Jail, he had been diagnosed with "multiple serious personality disorders" and "antisocial personality disorder." Id. at ¶1. The plaintiff explains that he has a history of

self-harm. Id. He asserts that all the defendants knew about his mental health diagnosis, and his self-harming history. Id. at ¶¶13-15.

   1.   *Deficient Medical Care*

The plaintiff alleges that on July 29, 2016, at approximately 3:40 p.m., he informed officers Kozak and Higgins that he felt suicidal and that he might engage in self-harm. He states he then used paper to cover the window of his cell. Id. at ¶18.

The plaintiff asserts that Kozak told Corporal Dequaine of the plaintiff's professed intent to commit suicide or self-harm, but that no one called for medical or psychological help, or put the plaintiff on observation status or a suicide watch. Id. at ¶20. The plaintiff also alleges that Dequaine told Lieutenant Rhode about the plaintiff's self-harm and suicide threats, and that Rhode likewise took no action. Id. at ¶21. The plaintiff alleges that Dequaine sent the plaintiff a message, through Kozak, that said, "No matter what you do, you're not getting a second shower." Id. at ¶22. The plaintiff interpreted this message as "an encouragement to plaintiff to commit, suicide or otherwise self harm." Id. at ¶23. He says that Kozak tried to speak to him through the in-cell intercom, but that the plaintiff did not respond. Id. at ¶24.

The plaintiff alleges that at about 4:10 p.m., Kozak passed out meal trays; he picked them up some twenty-five minutes later. Id. at ¶25. He says that Kozak and Nurse Pagels passed out medications at 5:15 p.m., about forty minutes after Kozak picked up the meal trays. Id. at ¶26.

4

The plaintiff recounts that at about 5:50 p.m., he "tied a state issued green sock around his arm to stop the blood circulation, so as to better access a good vein to cut open." Id. at ¶27. He then took "pieces of metal that [he] connected to a pencil," and began to cut his arm. He opened a "long wide gash" in his right forearm, which bled profusely. Id. A neighboring inmate, hearing the noises the plaintiff was making, notified the unit staff that the plaintiff was trying to commit suicide. Id. at ¶28. Kozak responded to the plaintiff's cell, the used the emergency call button to notify other staff. Id. at ¶29. Once other members of the staff had arrived, the plaintiff says, he stood at his cell door, showed the staff that he had a "hand full of psychotropic pills," then put the pills in his mouth and swallowed them "in an attempt to further facilitate his suicide." Id. at ¶30. The plaintiff says that the "defendants" then removed him from his cell and put him in a restraint chair. Id. at ¶31.

Nurse Pagels asked the plaintiff why he cut himself; the plaintiff responded that did it because "he could not take being confined to a cell 24 hours per day, 7 days per week without dayroom, visits, recreation, phone calls, religious material (books, song and prayer lists), or services provided; and having received no meaningful treatment for his mental condition." Id. at ¶32. The plaintiff asserts that he also told Pagels he had informed the unit staff that he was going to harm himself, but that they didn't try to stop him. Id. at ¶33. He alleges that Pagels responded "I'll wipe your wound and place a gauze of cotton in it. And I'll come back after I finish med. pass. So for now think about what you just did." Id. at ¶34. The plaintiff says that he told Pagels that she

5

could not punish him for being suicidal, and that he needed stitches. He says Pagels left the area. Id. at ¶35.

The plaintiff was still strapped into the restraint chair at 7:15 p.m., when the chaplain and pastor (not defendants) were speaking to him. The plaintiff says that Dequaine told the chaplain and pastor to leave. Id. at ¶36. Sometime—the plaintiff doesn't say when—the gauze that Pagels had put on the cut got stuck to his skin with dried blood; he says that when Pagels "ripped the gauze out of the wound it began to bleed again." Id. at ¶37. The plaintiff states that Pagels sprayed the wound with "something" and applied cream. Id. at ¶38. The plaintiff again told Pagels that he needed stitches, that what she was doing was wrong, and that it was causing him more pain. The plaintiff alleges that Pagels responded she would not apply stitches and that the plaintiff "should not have cut [himself] to begin with." Id. The plaintiff states he told Pagels that he did not want the bandage or the gauze; Pagels responded by grabbing his arm, at which point he told her not to touch him and to leave him alone. Id. at ¶39.

The plaintiff asserts that Lieutenant Trinker (not a defendant) took two pictures of the wound, id. at ¶40, and that at about 11:30 p.m., the plaintiff was placed on twenty-four hour observation, id. at ¶41. Going forward, Registered Nurse Emily Blozinsky (not a defendant) cleaned and treated the plaintiff's wound almost daily. Id. at ¶42. He states that when he told Blozinsky "the gauze got stuck in the wound and why the wound continued to bleed," Blozinsky responded, "Nurse Pagel should have never put gauze in an open

wound, [b]ecause it'll dry and the gauze will be stuck in the wound by the dried blood." Id. at ¶42.

The plaintiff alleges that if Kozak, Rhode, Higgins and Dequaine notified medical or psychological personnel about his threats of self-harm on July 29, 2016, he would have been put on suicide watch, and wouldn't have been been able to hurt himself. Id. at ¶55. He also alleges that because of defendant Sheriff John R. Gossage's failure to properly train his staff at the Jail, a "widespread, well-settled practice and custom that allowed [staff on the restrictive housing unit] to turn a blind eye and ignore detainee's and prisoner's threat of self-harm" developed. Id. at ¶59.

2. *Conditions of Confinement*

The plaintiff claims that while confined in "indefinite longterm [*sic*] solitary confinement" at the Jail, he was subjected to the following conditions of confinement: denied access to religious materials and services, visitation or calls with family and friends, bedding (sheets/pillows), clocks, dental care products, hair products (i.e., shampoo, conditioner, hair gel), grooming supplies (i.e. razors, nail clippers, wash cloths), canteen/commissary, indigent haircuts, sunlight or outside air, photographs, reading materials, and electronics (i.e. radio, television). Id. at ¶¶44, 48. He says that these conditions were caused by policies, rules and practices implemented by Gossage, Steffen and Malcolmson. Id. at ¶42. He also alleges that he was subjected to twenty-four-hour cell illumination while in the segregation unit and that the cells were cold, filthy, and unsanitary. Id. at ¶48.

7

The plaintiff asserts that on July 29, 2016, he filed a grievance regarding his lack of access to religious materials. Id. at ¶44. In the grievance, he alleged that he had spoken with the chaplain, who informed him that she had written several request slips for the plaintiff and sent him two books and songs about God. The plaintiff says he asserted that he did not receive the request slips or any of the materials, and he believed that the deprivation was retaliation in violation of his right to practice his religion. Id.

The plaintiff asserts that the grievance findings report stated

> The chaplain verified that she sent materials for you. She also stated that it has been a regular occurrence for items she sends down to either be sent back to her or for inmates to tell her they've never received them. Your grievance is founded, on the complaint that religious materials are not delivered to you. Considering this is an issue [that] has been affecting inmates other than you and has been going on longer than you have been here, you[r] claims that this is for retaliation are substantiated and are deemed unfounded.

Id. at ¶ 45. The plaintiff states that his complaint was closed. Id.

The plaintiff alleges that the conditions of confinement he describes—deprivation of religious materials, visitation, bedding, hygiene materials, access to sunlight and reading materials—were a direct result of defendant Gossage's policies and practices, and that defendants Malcomlson, Higgins, Steffan, Kozak, Dequaine and Rhode applied, implemented and enforced those rules. Id. at ¶¶46-47, 49. 56-58. He says that it was these conditions of confinement—harsher than any other restrictive housing unit conditions in the Department of Corrections, id. at ¶52—that caused him to become depressed and suicidal,

8

feelings that led to the July 29 self-harm incident. Id. at ¶¶53-54. He argues that Rhode, Higgins, Kozak, Dequaine, Gossage, Steffan and Malcolmson all were aware of the "common practice[s] and culture" of refusing to give inmates in the restrictive housing unit religious materials. Id. at ¶58.

The plaintiff seeks injunctive relief and compensatory and punitive damages.

    C.    <u>Analysis</u>

In the amended complaint, the plaintiff alleges the following:

\*    That Rhode, Higgins, Dequaine and Kozak were deliberately indifferent to his serious medical needs when they had knowledge that he meant to harm himself, but did nothing to stop him, <u>id.</u> at p. 13, ¶3;

\*    That Pagels was deliberately indifferent to his serious medical need when she denied him medical aid—and increased his pain and suffering—because she thought he needed to be taught a lesson, <u>id.</u> at ¶4;

\*    That Higgins, Rhode, Dequaine, Kozak, Steffen, Malcolmson and Gossage adopted, promulgated and enforced practices and policies that denied him his First Amendment right to practice his religion, <u>id.</u> at p. 12, ¶1;

\*    That Gossage, Steffen and Malcolmson maintained a custom and practice among the restrictive housing unit staff of depriving inmates of religious materials "at will and random [without] due process or notice given," <u>id.</u> at p. 13, ¶6;

9

\*      That Rhode, Higgins, Dequaine and Kozak subjected him to conditions of confinement that violated the Eighth Amendment, by subjecting him to long-term solitary confinement, id. at p. 13, ¶2; and

\*      That Gossage, Steffen and Malcolmson adopted policies and practices that created atypically harsh conditions of confinement at the Jail, in violation of the Eighth Amendment, id. at ¶6.

The plaintiff asserts that he sues all of the defendants in their official and individual capacities. Id. at ¶7.

          1.      *Deliberate Indifference to Medical Needs Claims*

Because the plaintiff was a convicted person at the time he was housed at the Jail,[1] the court analyzes his claims of deliberate indifference to his serious medical needs under the Eighth Amendment. See Cavalieri v. Shepard, 321 F.3d 616, 620 (7th Cir. 2003); Estate of Cole v. Fromm, 94 F.3d 254, 259 n.1 (7th Cir. 1996). Under the Eighth Amendment's prohibition against cruel and unusual punishment, prison officials have a duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). A "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate" violates that prohibition. *Id.* at 828. To establish deliberate indifference, the prisoner must show both an objective and a subjective component; the "objective" component requires the

---

[1] The Wisconsin Inmate Locator Service, https://appsdoc.wi.gov/lop/detail.do (last visited July 16, 2018) indicates that at the time of the events the plaintiff describes, he was designated to the Columbia Correctional Institution; he was at the Brown County Jail on a temporary basis from July 18, 2016 through August 12, 2016, for the purpose of attending court.

plaintiff to show that he suffered an objectively serious condition, and the "subjective" component requires the plaintiff to show that prison officials acted with a "sufficiently culpable state of mind." Greeno v. Daley, 414 F.3d 645, 652-53 (7th Cir. 2005) (quoting Farmer, 511 U.S. at 834 and other cases).

As to the objective component: a condition is objectively serious if "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Hayes v. Snyder, 546 F.3d 516, 522 (7th Cir. 2008) (citing Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)). Put another way, a serious medical condition "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." Greeno, 414 F.3d at 653 (citing Foelker v. Outagamie Cty., 394 F.3d 510, 512-13 (7th Cir. 2005)).

As to the subjective component: state officials act with deliberate indifference if they "realize[] that a substantial risk of serious harm to a prisoner exists, but then disregard[] that risk." Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015) (citing Farmer, 511 U.S. at 837). "The officials must know of and disregard an excessive risk to inmate health; indeed they must 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and 'must also draw the inference.'" Greeno, 414 F.3d at 653 (quoting Farmer, 511 U.S. at 837.

The Seventh Circuit has found that suicide satisfies the objective component of a deliberate indifference claim. See, *e.g.*, Pittman *ex rel.* Hamilton

11

v. Cty. of Madison, Ill., 746 F.3d 766, 775 (7th Cir. 2014); Estate of Cole, 94 F.3d at 261 (suicide is a serious harm); Hall v. Ryan, 957 F.2d 402, 406 (7th Cir. 1992) (recognizing that prisoners have a constitutional right "to be protected from self-destructive tendencies," including suicide). The court concludes, at this early stage, that the injury the plaintiff describes—a long gash in his forearm that bled and had to be treated daily over multiple days—also satisfies the objective component. See Cooper v. Casey, 97 F.3d 914, 916–17 (7th Cir. 1996) (finding that the failure to treat cuts, severe muscular pain, and a prisoner's burning sensation in his eyes and skin satisfied the first prong of the Farmer test).

The court finds that, at this early stage, the plaintiff has alleged sufficient facts to support a claim that Kozak, Dequaine, Higgins and Rhode were aware that he had said he felt suicidal and felt like harming himself, but took no action. The plaintiff also has alleged sufficient facts to allow him to proceed against Pagels on a claim that she failed to adequately treat the laceration on his arm, and made it worse, because she felt he needed to be taught a lesson. The plaintiff may proceed with his Eighth Amendment deliberate indifference claims against Kozak, Dequaine, Higgins, Rhodes and Pagels.

2. *Failure to Train Claim*

The plaintiff doesn't list it separately in his "causes of action" section of the amended complaint, but he alleges in the fact section that defendant Gossage, in his official capacity as Sheriff, failed to train Jail staff, which led to

12

or contributed to their deliberate indifference to the plaintiff's serious medical need. The court treats an official capacity claim against the sheriff as a claim against the county itself—in this case, Brown County. Grieveson v. Anderson, 538 F.3d 763, 771 (7th Cir. 2008). This is because "[g]overnmental entities cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out under an official custom or policy." Id. Even though Brown County is not a "person," and even though §1983 prohibits "persons" acting under color of law from violating a plaintiff's civil rights, a municipal entity such as Brown County may be liable for violating §1983 if the allegedly unconstitutional action involved implementing or executing a policy, regulation or decision "officially adopted and promulgated by that body's officers." Monell v. Dep't of Social Serv's of City of New York, 436 U.S. 658, 690 (1978).

The plaintiff alleges that because of defendant Gossage's failure to properly train his staff at the Jail, a "widespread, well-settled practice and custom that allows [the officers] to turn a blind eye and ignore detainee's and prisoner's threat of self-harm" developed. He alleges this practice and custom was adopted and promulgated by Gossage and was the direct cause of the officer's disregard of his serious medical needs. "The failure to provide adequate training to its employees may be a basis for imposing liability on a municipality . . . [if that] failure to train reflects a conscious choice among alternatives that evinces a deliberate indifference to the rights of the individuals with whom those employees will interact." Rice *ex rel.* v. Correctional Medical Serv's., 675 F.3d 650, 675 (7th Cir. 2012) (citations omitted). The plaintiff has alleged

sufficient facts to allow him to proceed on a failure-to-train Monell claim against Brown County.

### 3. *Conditions of Confinement Claim*

To state an Eighth Amendment conditions of confinement claim, the plaintiff must allege that the defendants imposed conditions which denied him "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). He must also allege that the defendants acted with a culpable state of mind, meaning that they knew that the plaintiff "face[d] a substantial risk of serious harm and disregard(ed) that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847.

The plaintiff provides the court with a long list of conditions in the restricted housing unit that he claims violated the Eighth Amendment—denial of visitation, denial of phone privileges, denial of bedding, denial of clocks or watches, denial of hygiene products, denial of commissary privileges, denial of razors or nail clippers or haircuts, denial of access to sunlight or outside air, denial of photos, books and magazines, denial of television/radio, denial of wash cloths and bath towels, exposure to twenty-four-hour cell illumination, and exposure to cold, dirty, unsanitary cells. Dkt. No. 13 at 10-11. He says that these conditions caused him to become depressed, which led to his self-harm. Id. at 11. But nowhere does the plaintiff allege that the defendants—Rhode, Higgins, Dequaine, Kozak, Gossage, Steffen and Malcolmson—knew that these conditions posed a serious risk of harm to the plaintiff. The plaintiff says these defendants knew he had a history of self-harm, but he does not

14

allege that he complained to these defendants about the conditions in the restrictive housing unit. He does not say that they were aware that the reason he felt depressed, or self-destructive, was because of these conditions. It appears that after he cut himself, the plaintiff told Nurse Pagels that the reason he did it was because he couldn't face the conditions in segregation. But he makes no mention of having told anyone else before that point.

The plaintiff has not alleged sufficient facts to show that the defendants knew that these conditions posed a risk to the plaintiff's health and disregarded that knowledge. The court will not allow the plaintiff to proceed on a conditions-of-confinement claim.

    4.    *First Amendment Claims*

Finally, the plaintiff alleges that various defendants violated his First Amendment right to practice his religion. Prisoners retain the right to exercise their religious beliefs, but those rights are not unfettered. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348–49 (1987); Turner v. Safley, 482 U.S. 78, 89–91 (1987); Tarpley v. Allen Cty., In., 312 F.3d 895, 898 (7th Cir. 2002). Prison officials may restrict an inmate's ability to practice his faith when the restriction is reasonably related to a legitimate penological interest. See Turner, 482 U.S. at 89. Legitimate penological interests include security and economic concerns. Al–Alamin v. Gramley, 926 F.2d 680, 686 (7th Cir. 1991).

The plaintiff alleges that there was a policy or custom at the Jail of denying religious materials to inmates in the restricted housing unit. He names several defendants—Gossage, Steffen, Malcomson, Kozak, Rhode, Higgins and

15

Dequaine—as people who created, implemented or enforced this policy or custom, and indicates that he is suing them in their official capacities.

The plaintiff has not alleged that any of these defendants, specifically, denied him his religious materials. If he had, that would have been a "personal capacity" suit, and he would have had to demonstrate that the particular individual was personally involved in depriving him of his First Amendment rights. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citations omitted). The plaintiff alleges an official capacity claim, which "is, in all respects other than name, to be treated as a suit against the entity." Id. Again, in this case the "entity" is Brown County. At this early stage, the court will allow the plaintiff to proceed against Brown County on a Monell claim that there was a policy or practice of denying restrictive housing unit inmates religious materials.

     5.    *Brown County Jail*

The court notes that, despite Judge Duffin telling him that he could not do so, the plaintiff again has named the Brown County Jail as a defendant in the amended complaint. As Judge Duffin explained, the Jail is not a person or a legal entity for purposes of §1983. Louis v. Milwaukee Cty. Jail, No. 17-CV-113-WED-PP, 2017 WL 3037567, at *2 (E.D. Wis. July 18, 2017) (citing Powell v. Cook Cty. Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993)). The court will dismiss the Jail as a defendant, and will ask the clerk's office to add Brown County as a defendant.

**II.    Conclusion**

The court **ORDERS** that the Brown County Jail, Sheriff John Gossage, Phil Steffen and Captain Malcolmson are **DISMISSED** as defendants.

The court **DIRECTS** that the clerk's office **ADD** Brown County as a defendant.

The court **ORDERS** that the plaintiff may proceed on a deliberate indifference claim against defendants Kozak, Dequaine, Rhode, Pagels and Higgins. The court **ORDERS** that the plaintiff may proceed on <u>Monell</u> claims of deliberate indifference and First Amendment violations against Brown County.

The court **ORDERS** that under the informal service agreement between Milwaukee County and this court, copies of the plaintiff's amended complaint and this order are being electronically sent to Milwaukee County for service on Milwaukee County defendants Officer Kozak, Corporal Dequaine, Lieutenant Rhode, Nurse Pagels and Officer Higgins.

The court **ORDERS** that, under the informal service agreement between Milwaukee County and this court, defendants Officer Kozak, Corporal Dequaine, Lieutenant Rhode, Nurse Pagels and Officer Higgins shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined (the Wisconsin Secure Program Facility).

The court **DIRECTS** that this case be returned to Judge Duffin for further proceedings.

The court **ORDERS** that the parties shall not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court.[2] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, the court will require him to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

THE PLAINTIFF MUST NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he does not file documents or other information by the deadlines the court sets, the court may dismiss his case for failure to diligently prosecute it.

The parties must notify the Clerk of Court of any change of address.

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 17th day of July, 2018.

                **BY THE COURT:**

                _____
                **HON. PAMELA PEPPER**
                **United States District Judge**